**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | | |
|---|---|---|
| **ANICE ANDERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Cause No. 2:08-cv-471-WTL-WGH** |
| | ) | |
| **HARTFORD LIFE AND ACCIDENT** | ) | |
| **INSURANCE COMPANY et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ENTRY ON MOTIONS FOR SUMMARY JUDGMENT

Before the Court are two motions for summary judgment – one filed by the Plaintiff

(Docket No. 72) and one filed by the Defendants (Docket No. 85) – as well as the Plaintiff's

motion for oral argument (Docket No. 78) and the Plaintiff's objection to the Magistrate Judge's

Order (Docket No. 104).  These motions are fully briefed, and the Court, being duly advised,

now **GRANTS** the Plaintiff's motion for summary judgment, **DENIES** the Defendants' motion

for summary judgment, **DENIES** the Plaintiff's objection to the Magistrate Judge's Order, and

**DENIES AS MOOT** the Plaintiff's motion for oral argument.

## I.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment is appropriate

if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  In ruling on a motion for summary

judgment, the admissible evidence presented by the non-moving party must be believed and all

reasonable inferences must be drawn in the non-movant's favor.  *Zerante v. DeLuca*, 555 F.3d

582, 584 (7th Cir. 2009).  However, "[a] party who bears the burden of proof on a particular

issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual

allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v.*

*Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).  Finally, the non-moving party bears

the burden of specifically identifying the relevant evidence of record, and "the court is not

required to scour the record in search of evidence to defeat a motion for summary judgment."

*Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

The fact that the parties in this case have filed separate motions for summary judgment

does not alter the standard set forth in Federal Rule of Civil Procedure 56(c)(2).  When

evaluating each side's motion the court simply "'construe[s] all inferences in favor of the party

against whom the motion under consideration is made.'" *Metro. Life Ins. Co. v. Johnson*, 297

F.3d 558, 561-62 (7th Cir. 2002) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685,

692 (7th Cir. 1998)).

## II.  BACKGROUND

The Plaintiff, Anice Anderson, was employed by the Defendant, Rose-Hulman Institute

of Technology ("Rose-Hulman"), as both an Associate Professor of Engineering and as the

Department Chair for the Engineering Department.  As Department Chair, Anderson oversaw

"department academic curricula, laboratories, faculty and staff."  Record at 700.  Although

Anderson has cervical disc disease, which necessitated a C5/6 and a C6/7 fusion in 2005, she

remained able to perform her job.

### A.    Anderson's medical history.

On August 21, 2007, Anderson fell on the stairs at work and injured her neck and back.

The next day, Anderson saw Dr. Susan Burkholder at the Center for Occupational Health.  A CT scan of Anderson's cervical spine was performed and no acute fracture or dislocation was revealed.  Anderson was given painkillers and muscle relaxants and was instructed to remain off of work until her next appointment on August 27.  At the August 27 appointment, Dr. Burkholder ordered Anderson to remain off of work until she was evaluated by a neurologist.

Anderson saw neurologist Dr. Kylene Huler of Comprehensive Neurologic Services on September 4, 2007.  Dr. Huler reported that Anderson had "post-concussive syndrome, previous C-spine fusion, with exacerbation of symptoms resulting in a left cervical radiculopathy, possibly with an ulnar neuropathy and/or carpal tunnel syndrome."  Record at 746.  Dr. Huler recommended "better pain control," prescribed Neurotin, and ordered Anderson to remain off of work until further testing could be completed.  *Id*. at 744, 746.

On September 19, 2007, Anderson saw her primary care physician, Dr. Hans Andreasen.  Dr. Andreasen recommended physical therapy to alleviate her muscle soreness and opined that Anderson was still unable to return to work.  Anderson then attended twenty-two physical therapy sessions, which failed to improve her condition.  On October 22, 2007, Anderson followed up with Dr. Andreasen.  Her condition remained unchanged and she was ordered to return in one month.  On November 20, 2007 and December 13, 2007, Anderson again saw Dr. Andreasen.  Her condition had not improved, which caused her to worry that something had gone wrong with her 2005 neck surgery.  At the December 13 appointment, Dr. Andreasen referred Anderson to Dr. Susan Sharifi for pain management.

Dr. Sharifi saw Anderson on December 17, 2007, and noted a decreased range of motion of the cervical spine, pain, tenderness to palpation, restricted ear to shoulder movement, and

trigger point tenderness in the left supra and infrascapular area. Record at 427. Two days later, on December 19, 2007, Anderson returned to Dr. Sharifi. A TENS unit and physical therapy were discussed.

**B.    Anderson's long term benefits claim.**

Rose-Hulman's long term disability insurer is Defendant Hartford Life and Accident Insurance Company ("Hartford"). The Hartford insurance policy (the "Plan") states that "[t]he plan administrator has delegated sole discretionary authority to Hartford Life and Accident Insurance Company to determine Your eligibility for benefits and to interpret the terms and provisions of the plan and any policy issued in connection with it." Record at 25. According to the Plan, "*Disability* or *Disabled* means that *You* satisfy the Occupation Qualifier or the Earnings Qualifier as defined below." *Id*. at 8. In this case, the Occupation Qualifier definition is relevant and states: "*Disability* means that *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are: 1) continuously unable to perform the *Material and Substantial Duties* of *Your Regular Occupation*; and 2) not *Gainfully Employed*." *Id*. "**Regular Occupation** means the occupation that *You* are performing for income or wages on *Your Date of Disability*. It is not limited to the specific position that *You* held with *Your* Employer." *Id*. at 24. Finally, the Plan requires a ninety day elimination period, which "is a period of continuous *Disability* which must be satisfied before *You* are eligible to receive benefits from *Us*. *You* must be continuously *Disabled* through *Your Elimination Period*." *Id*. at 4, 8.

Anderson's last day of work was August 21, 2007, the day of her fall. She applied for

benefits on November 10, 2007.[1]  In conjunction with her benefits application, Anderson

submitted a physician's statement of disability from Dr. Andreasen and treatment records from

her physical therapy sessions.  In February 2008, Hartford contacted Dr. Andreasen and

requested clarification on several issues, including whether Anderson was unable to perform

sedentary work from August 22, 2007, until the present date.  Dr. Andreasen responded in the

affirmative and referenced his office and physical therapy notes.  Record at 390.  On March 7,

2008, Hartford notified Anderson of its decision on her claim for benefits.  Hartford explained

that it reviewed "[a]ll the papers contained in your file" including:

- The Employer and Employee sections of the Application for Long Term Disability Income Benefits received on 12/04/2007.
- The Attending Physician's Statement signed by Dr. Andreasen on 12/03/2007;
- Office notes and medical records from Dr. Andreasen from 08/29/2007 through 12/14/2007;
- Office notes and medical records from Dr. Sharifi from 12/17/2008 through 01/25/2008;
- Office notes and medical records from Dr. Burkholder from 08/22/2007 through 08/27/2007;
- Office notes and medical records from Dr. Huler from 09/04/2007;
- Physical therapy notes from Union Hospital from 09/25/2007 through 11/30/2007;
- Job Description for the position of Department Chair of Engineering from your Employer, received on 12/06/2007;
- Peer Review Analysis completed by Dr. Judith A. Wilson[2] on 02/28/2008.

Record at 95.  Hartford then explained the elimination period and the definition of disability, *see*

---

[1] Hartford notes that although Anderson may have applied for benefits on November 10, 2007, it did not receive her application until December 4, 2007.  However, this distinction is of no import.

[2] Hartford's letter erroneously refers to Dr. Judith A. Wilson.  The reviewing physician's name is actually Dr. Judith A. *Willis*.  For clarity's sake, the Court will henceforth refer to Dr. Willis, not Dr. Wilson.

*id.* at 96, before outlining the duties of Anderson's regular occupation.

> The Job Description and other Employer information in your file show that your regular occupation is Academic Department Head.  To perform these duties, you must be physically able to stand, walk, sit, and regularly be required to use hands to finger, handle, or feel and reach with arms and hands.  The essential duties of the occupation include, but are not limited to, recommendations for hiring, promotions, and tenure, evaluations of department faculty and staff, allocation of operating budget funds, and supervisory responsibilities of department staff and faculty.
>
> While the job description for an Academic Department Head does note that employees may occasionally need to lift up to 25 lbs., your Employer has verified that you would only need to be able to occasionally lift or carry a laptop computer that weighs 5 to 10 lbs.

Record at 96.  Hartford referenced a statement from Dr. Andreasen opining that "he could see no medical contraindication in your ability to perform sedentary work."  *Id.*  "Dr. Sharifi saw no indications for any limitations . . . that would prevent you from performing light work."  *Id.*  Hartford also explained that an "independent records review was performed by Dr. [Willis]," and "[b]ased on Dr. [Willis'] review, it was determined that you are physically able to perform light work."  *Id.*  Hartford concluded that Anderson was "able to lift 20 lbs., with frequent lifting or carrying of objects that weigh up to 10 lbs, continuous sitting and use of hand controls, and standing/walking up to 6 hrs. in an 8 hr. work day."  Record at 97.  After comparing this information to the "Essential Duties of Your Occupation as a Department Chair of Engineering," Hartford determined that Anderson was able to perform her job.  *Id.*  Accordingly, her claim for long term disability benefits was denied.  *Id.*

### C.    Anderson's appeal.

Anderson timely appealed Hartford's denial.  In support of her appeal she submitted additional medical records from treating physician Dr. Kathleen Steinstra.  These records

6

indicate that after her first visit with Dr. Steinstra, Anderson began weekly acupuncture for pain

control.  However, Anderson could not tolerate the acupuncture needles and ultimately opted to

try a TENS unit instead.  On March 4, 2008, Anderson returned and reported that she was unable

to tolerate the TENS unit.  Dr. Steinstra then prescribed Darvocet.  Anderson had follow up

appointments with Dr. Steinstra on April 3 and April 24.  At the April 24 appointment, Dr.

Steinstra prescribed Flexeril and Skelaxin.  Although she continued on these medications, on

June 6, 2008, Anderson reported that her pain remained unchanged.  Dr. Steinstra opined on July

25, 2008, that based on her medical condition, Anderson was unable to perform the duties of her

job.  *See* Record at 235-36.

Anderson also submitted the results of an independent medical examination performed by

Dr. Daniel Brown.  Dr. Brown, who is board certified in Occupational Medicine, examined

Anderson on June 27, 2008.  He also reviewed records from Dr. Andreasen and Dr. Sharifi, and

ultimately opined that Anderson's impairment from her cervical spine condition is between

twenty-five and twenty-eight percent.

> This is a high level of impairment.  Approximately 95% of the individuals I have
> examined in the past with an impairment this high are not working, are severely
> physically restricted and have no prospects for meaningful employment.  In other
> words, **this level of impairment is usually associated with permanent
> disability**.

Record at 253.  Dr. Brown specifically disagreed with Dr. Willis' finding of "'minimal

impairment based on minimal objective physical findings.'"  *Id*.  Dr. Brown noted that "Dr.

Willis does not provide an impairment calculation, and it is not possible to ascertain her

definition of minimal."  *Id*.  Michael L. Blankenship at Blankenship Vocational Services

referenced Dr. Brown's assessment and concluded that Anderson "is unable to perform

significant work function which would qualify her as being disabled under the Long Term

Disability Benefits Guideline." Record at 290. He stated that Anderson

> is currently so shattered by her injuries that she cannot perform the duties of her
> occupation as a college professor. In addition, while she has multiple skills, she
> is not physically capable of transferring those skills into a sedentary level of
> performance or any other classification of strength factor identified and defined
> by the U.S. Department of Labor. The only reasonable conclusion is that Ms.
> Anderson cannot compete in the workforce in her prior type of employment as a
> professor nor any other occupation which is identified by the U.S. Department of
> Labor.

*Id.*

Finally, Anderson submitted a functional capacity evaluation from Dr. David Cross. Dr.

Cross evaluated Anderson and concluded that her prognosis was "Poor/guarded/NO WORK

POTENTIAL." Record at 282.

After receiving Anderson's appeal, Hartford obtained peer review reports from Dr.

Philip J. Marion and Dr. Leonid Topper, both of MES Solutions. Dr. Marion reviewed medical

records provided by Hartford including "claimant's most recent self-reported statements of

functionality." Record at 148. Dr. Marion stated that "[t]here is a need for

restrictions/limitations . . . . which include: lifting 20 pounds occasionally and 10 pounds

frequently; carrying 20 pounds occasionally and 10 pounds frequently, and pushing/pulling up to

50 pounds occasionally." *Id.* at 150.

Dr. Topper's report reflects a discussion with Dr. Marion during which Dr. Marion

opined that Anderson "is expected to be able to function at a light work level." Record at 128.

Dr. Topper then reviewed Anderson's medical records and concluded that she was

> capable of working at a light work level, with lifting and carrying limited to 20
> pounds occasionally and to 10 pounds frequently. Additionally, the claimant is
> limited to only occasionally repetitive flexion extension and rotation neck

8

> movements, assuming sustained neck postures, and performing activities above
> shoulder level.  The claimant's continuous sitting needs to be limited to 1 hour at
> a time, with 3-5 minute breaks to stretch, move about and change position.

*Id*. at 133-34.

After receiving Dr. Topper's and Dr. Marion's reports, Hartford referred Anderson's claim for an occupational analysis.  Julie-Ann Bird, a Rehabilitation Clinical Case Manager stated that "the essential physical duties and corresponding demands for [Anderson's] own occupation as Associate Professor [DOT Code: 090.227-010] are unequal for the [Rose-Hulman job description] and the occupation as found in the national economy."  Record at 138.  Bird explained that Anderson's specific job description from Rose-Hulman required "regular use of hands to finger, handle or feel and reach with hands and arms."  *Id*.  The Rose-Hulman job description would also require Anderson to occasionally stand, walk, sit, and "lift and/or move up to 25 pounds."  *Id*.  Bird noted that

> [i]n the National Economy the occupation is considered light duty requiring
> lifting, carrying, pushing, pulling 20 pounds occasionally, frequently up to 10
> pounds, or negligible amount constantly.  Can include walking or standing
> frequently even though weight is negligible.  Can include pushing and or pulling
> of arm or leg controls.  Reaching, handling and fingering are required
> occasionally.

*Id*.  Bird concluded by explaining that the Rose-Hulman job description would be considered medium duty, while in the national economy an associate professor position is considered light duty.  *See id.*

On November 3, 2008, Hartford denied Anderson's appeal because

> [i]t was noted that your clients [sic] occupation in the national economy would be
> considered unequal based upon the lifting requirements, the reaching, fingering
> and handling requirements.  Since the national economy identity's [sic] your
> client's duties within a light category there would be no findings in support of her
> out of work status as of August 21, 2007.  It is noted that previously your client's

9

employer confirmed that lifting duties was [sic] not essential.

Record at 88.  On December 10, 2008, Anderson filed this lawsuit under the Employee

Retirement Income Security Act of 1974 ("ERISA") alleging that Hartford wrongfully denied

her benefits.[3]

### III.  DISCUSSION

As noted, the Plan gives Hartford "sole discretionary authority . . . to determine . . .

eligibility for benefits and to interpret the terms and provisions of the plan and any policy issued

in connection with it."  Record at 25.  The parties agree that this provision is sufficient to require

the Court to review Hartford's decision under the deferential arbitrary and capricious standard.

*See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989).  However, "it remains true

that deferential review is not a euphemism for a rubber-stamp."  *Majeski v. Metro. Life Ins. Co.*,

590 F.3d 478, 483 (7th Cir. 2009).  The Seventh Circuit has explained that "arbitrary-and-

capricious review turns on whether the plan administrator communicated 'specific reasons' for

its determination to the claimant, whether the plan administrator afforded the claimant 'an

opportunity for full and fair review,' and 'whether there is an absence of reasoning to support the

plan administrator's determination.'"  *Id*. at 484 (quoting *Leger v. Tribute Co. Long Term

Disability Benefit Plan*, 557 F.3d 823, 832-33 (7th Cir. 2009)).  In *Majeski*, the court explained

that "a plan administrator's procedures are not reasonable if its determination ignores, without

explanation, substantial evidence that the claimant has submitted that addresses what the plan

itself has defined as the ultimate issue."  *Id*.

---

[3] Although Anderson's Amended Complaint (Docket No. 37) also includes a claim for
Breach of Fiduciary Duty, Anderson has informed the Court that she "is no longer pursuing a
claim for breach of fiduciary duty against Hartford."  Docket No. 100 at 17.

Anderson advances several arguments in support of her claim that Hartford's decision to deny long term disability benefits was unreasonable.  Although she leads off with a conflict of interest argument, the Court is not persuaded by this argument and thus, will not address it in detail.  Instead, the Court turns to Anderson's assertion that Hartford's reliance on the opinions of Dr. Marion, Dr. Willis, and Dr. Topper was an abuse of discretion.  Anderson argues that by emphasizing these reviewing physicians' reports, while deemphasizing the reports from her treating physicians, Hartford abused its discretion.  Hartford characterizes this argument as full of "general" and "conclusory" statements.  *See* Docket No. 100 at 26.  Hartford claims that it "actually reviewed the information submitted by Plaintiff to determine if it supported her claim for benefits" and that it appropriately relied on Dr. Willis, Dr. Topper, and Dr. Marion to conclude that Anderson could work a light duty job.

This presents what is essentially a battle of the experts between Anderson's physicians (Drs. Andreasen and Steinstra) and Hartford's reviewers (Drs. Marion, Willis, and Topper). Under ERISA, treating physicians' opinions are not entitled to more weight or deference than the opinions of physicians hired by the plan administrator.  *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833-34 (2003).  However, plan administrators cannot "arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of treating physicians."  *Id*. at 834.

In the instant case, all of the physicians agree that Anderson has a history of neck and back problems and that she suffers residual pain from her August 2007 fall.  It is difficult, however, to determine Anderson's pain level because there is no scientific test to quantify pain. In *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 919 (7th Cir. 2003), the Seventh Circuit harshly criticized a plan administrator that denied benefits based on the "the

difference between subjective and objective evidence of pain." The court explained that just because pain is subjective and "cannot be detected by laboratory tests" does not mean that pain cannot be disabling. *Id.* Accordingly, the denial of benefits in *Hawkins* was erroneous.

So too in the instant case. Here, Hartford unreasonably discounted Anderson's subjective complaints of pain and the resulting limitation on her activities. None of Hartford's reviewing physicians acknowledge Anderson's repeated complaints of pain or her treatment for such pain. Instead, all three physicians emphasize the lack of objective physical evidence of disability. *See* Record at 376 (Dr. Willis' opinion); *id.* at 150 (Dr. Marion's opinion); *id.* at 134 (Dr. Topper's opinion). This discounting of Anderson's subjective pain and the resulting limitations on her activities based on a lack of objective evidence was erroneous. *See Hawkins*, 326 F.3d at 918-19 (7th Cir. 2003) (reversing termination of benefits where reviewing physicians discount pain based on lack of objective evidence).

Furthermore, Hartford's reviewing physicians never examined Anderson. All three physicians relied on treatment records supplied by Hartford. The Court is not suggesting that it is recognizing a treating physician rule in the ERISA context. However, for Hartford to disagree with the apparently sound opinions of Anderson's treating physicians, it needed to rely on something more solid than the opinions of the consulting physicians. *See Nord*, 538 U.S. at 834 (2003) (cautioning plan administrators that they may not arbitrarily discount a treating physician's opinion). In short, the reviewing physicians "failed to come to grips with the real problem, the whole person, and the history that corroborate [her] complaints of pain." *Gessling v. Group Long Term Disability Plan for Emps. of Sprint/United Mgmt. Co.*, 693 F. Supp. 2d 856, 866 (S.D. Ind. 2010) (Hamilton, J.). Accordingly, the reviewing physicians' opinions and their

record review did not provide a reasonable basis for denying Anderson's application for disability benefits.

A brief note addressing Anderson's Objection to Magistrate Judge Hussmann's April 6, 2010 Order (Docket No. 104) is also appropriate.  Following the Supreme Court's decision in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008), ERISA plaintiffs challenging a plan administrator's decision are entitled to discovery to explore the plan administrator's conflict of interest.  Thus, in this case, Anderson sought, and ultimately discovered certain information about Hartford's internal operations.  This information was disclosed pursuant to a stipulated protective order and confidentiality agreement (Docket No. 66).  When Anderson then relied upon some of this information in her motion for summary judgment, she sought to unseal specific documents.  The Magistrate Judge denied Anderson's motion to unseal and she has now filed an objection to the Magistrate Judge's Order.  Although both this Court and the Seventh Circuit recognize the importance of public access to information,

> [t]here is no objection to an order that allows the parties to keep their trade secrets (or some other properly demarcated category of legitimately confidential information) out of the public record, provided the judge (1) satisfies himself that the parties know what a trade secret is and are acting in good faith in deciding which parts of the record are trade secrets and (2) makes explicit that either party and any interests member of the public can challenge the secreting of particular documents.

*Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 946 (7th Cir. 1999). In the instant case, the Magistrate Judge fulfilled his obligations, and, despite the fact that the information kept under seal is not a trade secret, it falls into the category of "legitimately confidential information."  In short, the Magistrate Judge's April 6, 2010 Order was not erroneous.  Further, because the Court has not relied on this information or the conflict of

13

interest argument in granting Anderson's motion for summary judgment, the Court declines to

unseal this information and accordingly **DENIES** Anderson's Objection.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Plaintiff's motion for summary judgment (Docket No. 72)

is **GRANTED**.  The Plaintiff's objection to the Magistrate Judge's Order (Docket No. 104) and

the Defendants' motion for summary judgment (Docket No. 85) are both **DENIED**.  The

Plaintiffs' motion for oral argument (Docket No. 78) is **DENIED AS MOOT**.  This case is

**REMANDED** to Hartford for additional findings and explanation on Anderson's application for

benefits.

SO ORDERED:  09/10/2010

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Elizabeth A. McDuffie
Gonzalez Saggio & Harlan, LLP
liz_mcduffie@gshllp.com

Bridget L. O'Ryan
O'Ryan Law Firm
boryan@oryanlawfirm.com

Amanda Lynn Yonally
O'Ryan Law Firm
ayonally@oryanlawfirm.com

14